Sanford. May it please the Court, my name is Robert Wood. I represent the appellant in these appeals. This is an appeal, first of all, 18-288 is an appeal of the trial conviction and sentencing. Appeal 3703 is an appeal of a denial of a Rule 33 motion for which the issue was ineffective assistance of counsel during the negotiation of a plea, during plea negotiations prior to the trial. And I will deal with appeal 18-288 first. With respect to the trial issues, I should note also that I came in as substitute counsel for Mr. Caruso, who was initially appointed, and he wrote the brief with respect to the first two briefs. And then I wrote a supplemental brief after my appointment in August of 2019 on the rehab issue. The first issue is the introduction under 404b of the heroin, evidence of prior sales of heroin. The thing that needs to be pointed out first is that this is a very unusual case. The defendant was found guilty of three counts. First, two 922 counts under 18 U.S.C., one of which was a felon in possession, the other was possession of a stolen weapon, and the third count was a witness tampering charge. And there was a hung jury on 11 narcotics counts, which involved so-called fake, which is basically items such as potpourri, which is sold over the counter in stores and supposedly legal until recent amendments to the criminal scheduling of the Criminal Substances Act, and which people normally would put in a bowl and put in their living room to freshen the ambiance of the room, but which other people would put in a pipe and smoke, and it creates all kinds of problems in terms of hallucinating and apparently has very strong addictive qualities. So the 404b evidence goes exclusively to the drug charges? So, yes. Well, it went to the drug counts, and I know where the Court's going with this. It was a hung jury. We're alleging there was a very bad spillover effect that that had. He was eventually convicted on the two weapons counts because of the incredibly bad prejudice that was caused by that. And there was — But the evidence that you're adverting to here was the evidence — was the testimony of Ms. Wheeler? Ms. Wheeler. That's correct. And that's his wife. But that didn't — she didn't testify — she testified with respect to his drug dealings, not with respect to the gun charges. She did not testify to the drug — that is very true, Judge. So I don't quite understand the spillover theory. Well, what we're saying is, is that the heroin sales evidence told the jury a story about Mr. Sanford that they didn't need to hear, and that is that he's a heroin dealer. We heard all kinds of evidence about drug dealing. I mean, hers was — in addition to other evidence, her testimony wasn't the exclusive evidence in that regard. I'm sorry, Judge? They heard other — they heard evidence about drug transactions in addition to Ms. Wheeler's testimony. They heard evidence of his selling potpourri, but the only person who testified about heroin sales was Wheeler. Mr. Wood, let me ask — I'm not sure I understand why you're arguing this was error. If the defense of the trial with regard to the synthetic marijuana was that he believed it was legal, that was his defense, right? That was his defense, and he announced that in his opening statement. Wouldn't it be an argument — I don't know if this argument was made to the jury, but certainly a jury might think, in support of his defense, that, well, if there's evidence that his wife was involved in that business, he must have thought it was illegal because he wouldn't have involved in his wife and jeopardized her in some illegal activity. Wouldn't that be a natural thing to argue or for a jury to think in that situation? Yes? His wife was estranged from him prior to that, and she also — The argument or the thought would be, he's involving his wife. He must have thought this was OK. The government — it would be highly probative for the government to say, well, wait a second, let's look at the history of their relationship with each other. They were dealing heroin together. They don't just have a marital relationship. They had a criminal relationship, and that's a classic reason that courts allow this type of evidence to show how the relationship, the criminal relationship, got established. And that, in this case where he's claiming, I thought it was legal, I think it's highly probative. OK. So even assuming that the court's analysis is correct and there was a limited purpose for which it could be offered, and you can read the record at A-74 to A-83 where that is fully discussed. At that point, it went way too far. And I'll read from the record. Not only did that come in, and there was discussions about what can come in and what can't. The question is asked, from the beginning of our relationship, she says in 2013 he began selling heroin. And the question is asked, question, did you help him sell heroin? Answer, yes, I did. This is from page 83. And how did you help him? I was with him when he would make the deals. I would go with him to Rochester. Question, so the supplier was located in Rochester? Answer, yes. Question, and he would drive to Penn Yen to get the supply. So why was that necessary? From Penn Yen to Rochester to get it? Answer, yes. How often would you go to get the heroin? Defense counsel, objection. So why does that need to come in? Why does it have to come in that he went to Rochester to get the heroin? You're suggesting that these ---- It went far beyond. No, but you have to consider this in the context of the whole case, as Judge Parker pointed out. On the firearm charge, the government pointed out there were seven witnesses who identified him as being involved with this shotgun sale. There was a Facebook where he is asked, do you want that other gun? And he gives a thumbs-up on a Facebook post. So the evidence on the gun was overwhelming. You're suggesting that these details of how they were dealing heroin together somehow infected the gun charge. There are plenty of witnesses who say he had the gun. There's not many witnesses at all that say he knew that gun was stolen. That's the problem, Judge. The conviction was on a stolen weapon, and so there's very little ---- And on a felon in possession. And felon in possession, right? And felon in possession, which I'm going to be getting to on the rehab thing. So ---- and I'm seeing my time is rapidly running, so I'm going to move on to other issues here. And there are some very important issues with respect to sentencing, which I want to move on to. The government has conceded that there was a mistake made in the pre-sentence report with respect to the defendant's criminal history category. And the Court made a very significant error, too. In this case, the defendant's sentencing range was 70 to 87, criminal history category 6, and sentencing range at 20. At that range, it's 70 to 87. The Court increased that range 7 points to double his suggested guideline range to 130 to 156 months. And it did so based upon an error. The pre-sentence report gave him two points for an AUL third conviction when he deserved only one point. And instead of having a true criminal history of 16, he had 17. Then the Court compounded that error by saying at sentencing that he had an 18. And it's in the record at page — well, it's in the record, and it's mentioned in the briefs. I'm having a little difficulty understanding this argument, so help me out. So the government concedes that there was an error. It should have been one point instead of two points. But if the district court had added only one point, he would still have been in the same criminal history category. The criminal history category didn't change, but he increased that seven levels because he said it wasn't sufficient enough. So he says — He did that because of the difference between the one and two points. I'm not — It goes from 16 to 18. But he increased it seven levels. So he said — so he says — he says to him — You are — you are at — he says to him, you are at level 18. That's way above the maximum of 13. That's way above 13, which gets you to Category 6. That's part of the reason why I'm sentencing you upwardly by seven levels. He made that reference. He then went through every conviction, four felony convictions, three convictions where you violated your parole, several assault convictions, the contempt-involved serious injury. So it wasn't — he wasn't basing the departure simply on the difference in those points, as Judge Livingston suggests. He gave very detailed reasons of why he believed that criminal history was underrepresented in terms of a criminal history 6, right? It was a long explanation. There's an explanation, but it doesn't explain — but it doesn't explain why he went up seven levels and doubled his criminal history score. And this Court has said many times that the Court must have the correct sentencing guideline before it can sentence a defendant. If the Court is operating under a misconception, if the Court thought he was an 18 before he sentenced him, if the Court thought that he had 18 criminal history points before going up seven levels, and the Court — and he actually had 16, and he was only three over the 13 at criminal history Category 6, would he still have gone up seven levels and doubled his sentence to what it should have been, which any other person at Category 6 would have been? Any other person would have received 70 to 87 months. This defendant received 156 months. Would he have — and he — even at that, he went up seven levels and sentenced him at the top of the range, at Level 27. The range was 130 to 156. That was also because of how he viewed his conduct as related to the deadlock count as well. It wasn't just the criminal history that led him to that, right? It was two things together. You're suggesting this was all because of the criminal history, but it was also because he believed that your client knew it was illegal, found that by preponderance of the evidence, and said even if he didn't think it was illegal, selling this to kids in the manner that he did, knowing how addictive it was and the harm it was causing, shows that he's a dangerous person overall with regard to his gun use and all other things. So it was multiple things going on for that amount of increase. Well, that's very true, Judge, but what this Court could do then is — and that's speculation. And quite frankly, what the Court should do under that circumstance is say — Speculation? He said that. I'm not speculating that he was thinking that. He explained, this is why I'm giving you this sentence. But he did that based upon incorrect information. There's no question he had — the government conceded he had incorrect information. So he thought the defendant here has 18 points. He goes, you have 18 points. But he didn't. He had 16. I understand that, but the question is, was that material to his ultimate decision of what he did? That's the question. Was that material to his ultimate decision? Do we know the answer? Usually, what this Court would do in that situation is remand it to him to ask him that question. That's all I'm saying. That's what the Court always does. So — and if I could move on then to — Your time has expired. Do you want to use some of your rebuttal time? I'll use some of my rebuttal time to move on to those. Thank you. May it please the Court, good morning. My name is Brett Harvey. I'm here on behalf of the United States, and I am arguing the appeal ending in 288. My colleague, Tiffany Lee, will handle the argument for docket ending 3703. Good morning. And if I could start with the sentencing argument that counsel was just addressing with the Court. Your Honor is correct that there was more than just the number of criminal history category points that led the Court to impose an above-guideline sentence of 156 months in this case. The Court did make reference to the number of criminal history category points being 18. We do concede that was error. There was a prior version of the PSR that did say 18 points. It was later changed to 17. We're conceding that the aggravated unlicensed operation should have counted from one — a conviction should have counted from one point as opposed to two. So 16 is the correct number, but it's clear from reading the sentencing transcript in this case that the Court did not base its decision to impose an above-guideline sentence strictly on the number of criminal history category points, although 16 points is still well above the minimum threshold to trigger a criminal history category 6. Well, your adversary is correct that we often send things back to the district court in circumstances where there's an error of this sort to make sure that the district court was not influenced by that error. So why is that not necessary in this case? Your Honor, I think it's apparent from this record that the judge's focus was on two things. First, the nature and quality of this defendant's criminal history, the number of convictions he had at a very young age, before the age of 26. The nature of those offenses involved everything from possession of drugs to assault of conduct, four convictions for criminal contempt, including one for aggravated criminal contempt in the first degree, involving him assaulting and threatening a female victim, his ex-wife, with a shotgun. The court also noted various parole and probation revocations that this defendant had. At the end of the day, aren't you arguing that guideline miscalculations can be harmless error? I guess I don't. In this particular case, yes, Judge. This is not really. And so there may be context in which that theoretically makes sense, but the problem I have is it really rubs up against legions of cases from this court saying that guideline miscalculations are procedural error. But in this case, it was an above-guideline sentence that the court ultimately imposed. And in doing so, he relied not only on the criminal history and the nature and number of convictions, but also he relied on that aggravating circumstance, and that being the defendant's involvement in the prolonged. It's perfectly clear how he got to where he was getting to on this record. Sure. But you have to help me understand under what theory a guideline miscalculation can be something we disregard. Well, this is just a miscalculation on a number of. There will be a lot of cases where at the end of the day we say, well, we see where the judge got to this particular result, so let's just forget about a miscalculation. Well, here the miscalculation did not lead to an improper criminal history category. What it could have led to, even if we could say with a lot of confidence, maybe almost 100 percent confidence, that even with 16 points he still would have gone above the guideline range. But the critical question would be would he have gone to the same level above that range? In other words, when he was trying to figure out how much higher to go, could he have been influenced by simply the points then, 16 versus 18? That's not insignificant when we're talking about how much higher he would have gone. That's really the argument, is that he may not, even if he, for all these other reasons, he would have gone above, he may not have gone that high if he had 16 points in his mind versus 18 points. What's your answer to that? I understand that point, Judge, and all I can say is that very minor difference, a very minor error, one point on an aggravated unlicensed operation can make two points. But first of all, 13 is a criminal history six, right? Yes. So he thought it was five points above, and, in fact, it was only three points above. So I don't know that in the context of if that's the measuring stick, that's hardly minor. That's a big percentage, right? That is correct, Judge. Although we're reviewing this for plain error here because the defense did not object to this particular point. But we know there was an error. Definitely the calculation is a plain error itself, right, at that point? The calculation is an error itself, Judge. But I would argue that this record more than justifies the upward departure that Judge Larimer imposed in this case and the above guideline sentence. With respect to point one on the 404B evidence, Judge Larimer did admit that evidence initially for two reasons. First, to show the development of the criminal relationship between the defendant and his wife, Alicia Wheeler. And he also did make reference in his initial ruling to admitting it because it goes to showing intent to distribute a controlled substance. So it was admitted for a more broad purpose than counsel has represented in the briefs. And I submit to you that that testimony was essential to set the stage for Ms. Wheeler's involvement in trafficking synthetic marijuana during the course of her marriage to him. So it explained how she became privy to his involvement in trafficking synthetic marijuana. Number two, and this is the way that I used it in my closing argument, the fact that the defendant, according to Ms. Wheeler, conducted many of his heroin transactions in the same manner that he conducted many of his synthetic marijuana transactions indicated that he knew that what he was trafficking in this case was, in fact, a controlled substance. What is the non-as to that argument? I get the argument about the nature of the relationship with his wife, nature and quality of that relationship. But the second, this argument is that it was admissible on the subject, on the issue of intent or knowledge that he dealt drugs, he dealt heroin the same way that he was dealing synthetic marijuana. So we should infer that he knows that synthetic marijuana is illegal. But the descriptions that you point to are pretty vague. I mean, it's not like the particular way in which he sold marijuana was very distinctive as opposed and similar to the way, it's not like modus operandi. So I'm having difficulty with the intent argument. Her testimony was that when the defendant would do the transactions involving synthetic marijuana, they may do it in open spaces like a store parking lot, a park, or somewhere out in the open when it wasn't in their apartment. But during those transactions, they may be out in the open, but they were done in such a way as making sure nobody was looking, maybe turning it back to conceal what was happening, the actual nature of the hand-to-hand transaction. That that was the substance of her testimony on that issue. And our point was, partially to anticipate the argument of the defense, that this was happening in the wide open for everybody to see, was that it may have been in the wide open, but it wasn't obvious what they were doing. They were concealing it because he knew that it was illegal and not just incense, potpourri, or aromatherapy, as the bags would indicate. With respect to — just to go back to sentencing, because I wanted to touch on this, the judge did, as part of his findings in imposing the above-guideline sentence, make essentially an alternative finding that he believed the defendant knew that what he was trafficking was an illegal substance. There's ample evidence in this record to support that finding, and I've done my best to summarize that in the brief, and I see my time is up. So I will — unless there are further questions. Thank you very much. Good morning. Sorry. I'm sorry. Good morning. May I please — I'm double-teaming you. Yes. May it please the Court, my name is Tiffany Lee, and I represent the United States on the appeal that's case number 18-3703, which involves the district court's denial of Mr. Sanford's Rule 33 motion based on allegations of ineffective assistance of counsel. As the record shows, there was a hearing that took place in which both Mr. Sanford and his attorney testified, his trial attorney testified, and the district court reviewed the transactions, the proceedings, reviewed the testimony from the hearing, and determined — made a determination that Mr. Sanford simply was not credible with respect to his allegations that because he relied on his counsel's representations that he would be, I guess in his words, almost guaranteed a term of imprisonment between 46 to 57 months if convicted on the weapons charges and potentially the witness intimidation charge that, you know, that that's what he was acting in reliance upon. As this Court is aware, this Court gives due deference to the district court's determination in the Rule 33 motion, and as the district court recognized, this case is nothing more than a case of buyer's regret. Throughout the testimony, Mr. Sanford was inconsistent with respect to his statements that he was reliant purely on the 46 to 57 months representation when during voir dire of the trial, at one point he turned to Mr. Harvey and flashed the — you know, flashed the hand signal for six years because he was basically indicating to Mr. Harvey at the voir dire portion that he was ready to take 72 months. So if he was truly relying on his trial counsel's purported representation that he was guaranteed 46 to 57 months, he would not have done so. So based on the record and based on the hearing testimony, the government respectfully requests that this Court affirm the denial of the Rule 33 motion. And unless there are any further questions, the government rests on its submissions. Thank you. In response, Your Honor, this is not a plain error issue with respect to sentencing. The Court of Appeals can review sentencing errors with respect to the guidelines de novo, and there is case law which suggests that that is the case. With respect to sentencing, the defendant does not have to object to the court's sentencing as the court is sentencing the defendant. It's not a matter of preserving objections at that point. The court sentences the defendant, and that's the end of the case. The defendant obviously will make his points known prior to sentencing as to what his position is on sentencing, and I believe the Court will agree with that. With respect to Rehoff, I did do a supplemental brief with respect to that, as the Court is aware that case came down long after the defendant's trial. The government recently submitted a letter, a frap letter, pursuant to Federal Rules of Criminal Procedure, Rule 28. It cited to this Court the United States v. Conley, which is an unpublished out-of-circuit decision that is contrary to Judge Sullivan of this Court's well-reasoned decision in United States v. Sepulveda. The Conley decision, much like many of the other decisions from out-of-circuit courts, imposes upon the defendant a constructive knowledge of his prior record. And one thing that I think that the Court must take into consideration is that many criminal defendants are not very bright, and some are, some aren't. Some of them have 90 IQs. Most of them don't or many of them don't remember what they did yesterday, much less what they did five years ago. And to impose constructive knowledge on all of them as to what their prior records are, is asking way too much. And there's never been a requirement of that, and Rehoff doesn't do that. With respect to Aliens. We don't have, we have out-of-circuit law, no circuit case on this, from this circuit yet. It appears to be pending before several panels. Yes, it is. There's many cases, and I would ask the Court to take those arguments into consideration. I see I've run out of, or I'm not, I haven't run out of time. So with respect to the ineffective assistance issue, Judge, I wrote an ex- I have run out of time, but I'm going to, you should take a few minutes on the ineffective assistance claim. Thank you very much, Your Honor. With respect to the ineffective assistance issue, this is a case where the approach of defense counsel prior to trial was perhaps might have been a good approach in a State case where the, you look at the charges as categories. This is the gun case. This is the drugs case. This is the tampering case. And here's our chances. If you beat the, you can beat the weapons case. You can't beat the, or you can beat the drug case. You can't beat the weapons case. He never told the defendant, if you get convicted of the, of the weapons charges, even if you're acquitted of the drug charges, the judge is going to use those and enhance your sentence, which is what he did. He's going to enhance your sentence way out of the, way out of the, whatever you can't believe. And if you get convicted of the tampering charge, he'll use the drug charges to enhance your sentence way beyond whatever you, you think is going to be possible. He. He was repeatedly told what his maximum exposure was. Yeah. He told him the maximum was, was, was 10 years on the, on the gun charges, which is correct. But he told me he was going to get three or four years on the tampering if he got convicted. And, and that's right in black and white in Mr. Nafis' testimony. And he also told, Mr. Nafis said that in his, in his filings, it became clear that he was, he never was familiar with the Watts case. And what, what defense lawyer who's representing someone who's facing decades of time in prison is not familiar with the Watts case, which says that a defendant can be sentenced for acquitted conduct, or his sentence can be enhanced for acquitted conduct? Even if we agree with you as to all the points you've just made, on the subject of prejudice, didn't the district court determine that your client's testimony was not credible? And isn't that a problem for you? Well, even if he thought defendant's testimony was not credible, Mr. Nafis agreed with a lot of what the defendant said. Mr. Nafis said that's how he, that's how he handled the case. And his own filings show he didn't, he didn't know the Watts case. Whether your client would have acted differently if he'd gotten different advice, whether he would have taken a plea. So, so, so what Mr. Nafis said was, if we, if, if you beat the drug cases, you're going to do fine. But, and he did beat, he wasn't convicted of the drug cases. So, so, Mr. Nafis also said, if you lose on the drug cases, you could do up to 20 years. So the defendant was taking a chance. But he beat the drug cases. Or, or didn't beat, didn't beat them, but he was a hung jury. So, so he, the issue was knowledge. So he did beat the drug cases. He still got 13 years because of the drug cases. And the, and the tampering charge, he got 13 years on. So we're submitting that, that that was ineffective and incomplete, incomplete legal advice, and ineffective legal advice prior to, and not just based upon the defendant's subjective testimony at the hearing, but based upon the, the defense attorney's testimony, which I submit the court, I respectfully request the court review very carefully. Thank you both. Thank you very much. Thank you all. And we will take the matter under advisement. Thank you.